## Burr's Administrator v. Hatter et al.

(Decided October 27, 1931.)

722

COLEMAN TAYLOR for appellant.

GERALD T. FINN and W. R. PEEBLES for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

The appellant, O. Z. Hutchison, qualified in the Logan county court as the administrator of Edmund P. Burr, deceased. The appellee, Emmett Hatter, had previously qualified as such in Simpson county court. The conflicting appointments gave rise to this suit, in which the Simpson circuit court held that the decedent was domiciled in that county and therefore that the appellant's appointment was ineffective. ·The sole issue presented on the appeal is the ''domicile'' of Mr. Burr within the meaning of the terms of sections 3894 and 4849 of the Statutes. The former provides that when a person dies intestate the court that would have jurisdiction to probate his will, had he made one, shall have jurisdiction to grant administration on his estate.· By the latter section such jurisdiction is vested in the court of

the county of his residence if he has a known place of residence in the commonwealth.

The "place of residence" in this connection means legal residence or domicile, as contradistinguished from "actual residence", that is, where the decedent may be temporarily abiding at the time of his demise. Shirley v. Burch, 6 Ky. Law Rep. 446; Robinson v. Paxton, 210 Ky. 575, 276 S. W. 500. As to what is or was one's residence often presents a difficult question. To determine it no satisfactory uniform rules have been evolved, but the consideration and weight to be given different states of fact, apparently conflicting, have been declared. Each case must be disposed of on its own peculiar facts.

The facts marshaled by the appellant, plaintiff below, to show that the residence of the decedent was in Logan county, are these:

The decedent was born on a farm in the Schochoh precinct of Logan county and resided there with his parents for several years, when they all moved to Auburn, in the same county. As a young man he entered the drug business in which he continued after the death of his father, which was about twenty-five years before his death. He then became a traveling salesman. After his father died he and his mother took up their abode at a boarding house in Franklin, Simpson county. They took with them the furniture for at least the mother's room. They left nothing in Logan county, so far as the record discloses, except the farm.

Burr never married and had no brothers or sisters. He inherited from his father the farm on which he was born and retained it to the end. He took more than a passive interest in the local elections and pretty regularly returned to the Schochoh precinct to cast his vote. He never voted elsewhere, and at the last election preceding his death when he was not physically able to make the trip from Franklin he refused to vote there. The live stock and implements on the farm were assessed for taxation under the partnership name of his tenant and himself, and, of course taxes were paid in Logan county on the land and personal property. However, he did not pay any poll tax or tax on intangibles there. He paid no taxes of any kind in Simpson county except the license for his automobile. The county judge, an old friend and neighbor, testified he was at his farm a part of nearly every year for a number of years, particularly during the year 1915 when he was actively in charge of it, and

always claimed it as his home. Another testified he lived on the farm for two or three years after his father died.

Over against the evidence produced by the appellant, the appellee showed as proof of his legal domicile in Simpson county that the decedent and his mother occupied rooms at the Williams boarding house from the time they left Auburn, which was about twenty-five years before his death. During week-ends and vacations Burr returned to be with his mother there, where he also had his room and personal effects. He would drive over to his farm three, or four times a year and sometimes stay a day or two. In 1913, on account of a storm destroying some barns and fencing, he spent quite a good deal of time there; but the tenant in charge for ten or twelve years testified clearly that he never retained a room in the residence or lived there. He stayed with a nearby relative. After his retirement from business his visits were more frequent. He did his banking business at Franklin during all that time, and his automobile was licensed in Simpson county. In retaining his status as a registered pharmacist, Burr gave Franklin as his address in his applications. He also registered at hotels as being from that town, and often referred to it as his home and town. It is worthy of notice that his mother voted in Franklin, although he, as stated, continued to vote at his old precinct in Logan county. A significant commentary on this, however, was made at the election next preceding his death when he was physically weak and unable to make the journey. It was suggested to him that he could vote in Franklin, and he responded: ''No, if I do I will have to pay school tax here and I don't want to do that.'' It was also stated that he had continued to vote in Logan county because he thought something might come up that would affect his property there, and it was to his financial interest to do so. There was evidence that for several years he had desired to sell his farm but would not do so for less than he considered it to be worth.

Two or three years after his mother's death, which was in 1925, Burr retired from business. But he continued living at his old boarding house, where he died in January, 1931.

Legal residence is based upon fact and intention; that is, it is to be determined by location of the person and his intention to abandon a former domicile and establish a new one. Intention is the dominant factor and it

is to be deduced from the facts in evidence, conjoined with residence or location. Semple v. Commonwealth, 181 Ky. 675, 205 S. W. 789. A person can, of course, have but one legal residence, and where he had made his abode at a place for so great a length of time as the record shows the decedent, Burr, stayed in Franklin, Simpson county, that prima facie must be deemed his legal residence. City of Lebanon v. Biggers, 117 Ky. 430, 78 S. W. 213, 25 Ky. Law Rep. 1528; Boyd's Ex'r v. Commonwealth, 149 Ky. 764, 149 S. W. 1022, 42 L. R. A. (N. S.) 580, Ann. Cas. 1914B, 481. His domicile of origin and for a number of years his domicile of choice was in Logan county. There is a presumption that an established domicile continues until another is acquired by actual residence there with the intention of abandoning the former one. Wallis v. Short, 193 Ky. 827, 237 S. W. 675. That is of course the subject of proof—the fact of a legal domicile shown by location of the person and circumstances from which the courts will conclude an intention with respect to it. Thus it is said in Saunders v. City of Flemingsburg, 163 Ky. 680, 174 S. W. 51, 52:

"A removal which does not contemplate an absence from the former domicile for an indefinite and uncertain time does not constitute a change. Where, however, there is a removal, unless it be shown or inferred from the circumstances that it was for some particular purpose expected to be only of a temporary nature or in the exercise of some particular profession, office, or calling, a change of domicile is effected. City of Lebanon v. Biggers, 117 Ky. 430, 78 S. W. 213, 25 Ky. Law Rep. 1528; Graves v. City of Georgetown, 154 Ky. 207, 157 S. W. 33; City of Winchester v. Van Meter, 158 Ky. 31, 164 S. W. 323; Boyd's Ex'r v. Commonwealth, 149 Ky. 764, 149 S. W. 1022, 42 L. R. A. (N. S.) 580, Ann. Cas. 1914B, 481. Whether or not a new residence has been acquired cannot be made to depend upon one fact or combination of circumstances, but from all the facts and circumstances. Helm's Trustee v. Commonwealth, 135 Ky. 392, 122 S. W. 196."

Declarations made by the party may be regarded as an index to his intention, but are not always to be regarded as a high quality of proof, for they may be conflicting or made for a self-serving or other specific purpose. 19 C. J. 438; Montgomery v. Lebanon, 111 Ky.

646, 64 S. W. 509, 23 Ky. Law Rep. 891, 54 L. R. A. 914; Semple v. Commonwealth, supra.

Here the decedent is shown to have referred to his birth place and old homestead as his home, which was not unnatural, though the expression was in conflict with the greater number of declarations, verbal and written, that his home was in Franklin. The statements may be reconciled by a consideration of their purposes. It was quite natural that he should refer to his birthplace and old homestead as home—the sanctuary of one's paternal fireside, full of melodies and harmonies of childhood joy, ever tugging at the heartstrings of human emotion. But Franklin, where he lived for more than a quarter of a century, and continued to live even after the death of his mother, was his place of residence and abode. His remaining there for so long after his retirement from active business, coupled with the expressed desire to sell his farm upon acceptable terms, negatives the idea that he expected to return to the farm to live. The long-continued residence of his mother and himself—constituting his family—in the Williams boarding house, and all the surrounding circumstances, made of it more than merely lodging in a hotel or boarding house, which is usually far from permanency and without a fixed purpose to remain and to treat it as a home.

The strongest evidence adduced to prove domicile in Logan county is the fact of his having continued during the many years to vote in the precinct in which his farm was located. It is said in 19 C. J. 437:

"Exercise of the elective franchise is important to be considered. While it may be the highest evidence of domicile, as a general rule it is not conclusive, and when overbalanced by other circumstances, the fact of voting may be of slight importance. The fact that a person has failed or refused to vote at a certain place is evidence tending to show that he is not domiciled there."

In several cases involving domicile for taxation purposes, we have given consideration to the fact of one having voted at a place, and held that to be a circumstance showing legal residence. Town of London v. Boyd, 77 S. W. 931, 25 Ky. Law Rep. 1337; Hurst v. City of Flemingsburg, 172 Ky. 127, 188 S. W. 1085; City of Ashland v. City of Catlettsburg, 172 Ky. 364, 189 S. W. 454, 455; City of Covington v. Shinkle, 175 Ky. 530,

194 S. W. 766. But there were persuasive circumstances in those cases additional to the act of voting. In the case at bar not only are those facts absent, but all the persuasive additional facts and circumstances are the other way. Indeed, it is the only substantial fact that would tend to prove residence in Logan county. Its significance is destroyed by the reasons assigned by the decedent for having cast his vote there rather than in Franklin. This incident must be considered in the light in which it was regarded in Graves' Adm'r v. City of Georgetown, 154 Ky. 207, 157 S. W. 33, and Pettit's Ex'r v. City of Lexington, 193 Ky. 679, 237 S. W. 391. In them it was held the act of voting in one place was not conclusive but had been overcome by the preponderance of other facts. There are many cases other than those cited in which the legal principles were considered and applied. Of pertinency, because of similarity of evidence, are Baker v. Baker, Eccles & Co., 162 Ky. 707, 173 S. W. 109, L. R. A. 1917C, 171; Robinson v. Paxton, 210 Ky. 575, 276 S. W. 500.

We concur in the views of the circuit court that the decedent was legally domiciled in Simpson county.

Accordingly, the judgment is affirmed.